# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **BRODRICK BERRY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **CASE NO:** _____ |
| ) | |
| **HOMELAND VINYL** ) | **JURY TRIAL DEMANDED** |
| **PRODUCTS, INC.,** ) | |
| ) | |
| **Defendant.** ) | |

## COMPLAINT

**COMES NOW,** the Plaintiff, Brodrick Berry, by and through undersigned counsel of record, and alleges the following:

## PRELIMINARY STATEMENT

Plaintiff Brodrick Berry is an African American male who was, at all times relevant to this action, employed by Homeland Vinyl Products, Inc. This action seeks redress for Homeland's violation of Mr. Berry's civil rights in violation of Title VII of the Civil Rights Act of 1964, as codified in 42 U.S.C. § 2000(e), and violation of 42 U.S.C. § 1981.

## PARTIES

1. **Plaintiff Brodrick Berry ("Plaintiff" or "Mr. Berry")** is a citizen of the United States, a citizen of the State of Alabama, and is over nineteen (19) years of age.

1

At all times relevant to this action, Mr. Berry was an employee at Homeland Vinyl Products, Inc.

2. **Defendant Homeland Vinyl Products, Inc. ("Defendant" or "Homeland")** is a corporation incorporated under the laws of the State of Alabama, with its principal place of business in the State of Alabama. At all times relevant to this action, Homeland was Mr. Berry's employer.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343(a)(3), 28 U.S.C. § 1343(a)(4), and 42 U.S.C. § 1988(a), as this action seeks redress for violations of Plaintiff's civil rights, pursuant to Title VII of the Civil Rights Act of 1964, as codified in 42 U.S.C. § 2000(e), and 42 U.S.C. § 1981.

4. This Court has supplemental jurisdiction over Plaintiff's claims under 28 U.S.C. § 1367, as Plaintiff's state law claims arise from the same case or controversy and are so related to the claims in this action within this Court's original jurisdiction.

5. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2), as the events and omissions that give rise to Plaintiff's claims occurred exclusively within this Court's judicial district.

## ADMINISTRATIVE PREREQUISITES

6. The Equal Opportunity Commission ("EEOC") received a timely charge (Charge Number 420-2020-005598) filed by Mr. Berry on or about November 22, 2019. In his timely charge, Mr. Berry alleged a hostile work environment, citing his race as the motivating factor. The EEOC did not proceed further with its investigation into Mr. Berry's claims and issued him a right to sue letter on September 28, 2022. (*See* Exhibit A).

7. All conditions precedent to the filing of this lawsuit have occurred.

## FACTUAL ALLEGATIONS

8. Mr. Berry is an African American male.

9. Mr. Berry was employed by Homeland Vinyl as a machine operator.

10. On or around July 21, 2019, at approximately 2:00 p.m., Mr. Berry returned from break to his workstation.

11. Mr. Berry was the only African American employee working in that area of Homeland.

12. Mr. Berry found a hangman's noose hanging at his workstation.

13. The noose was intentionally placed at Mr. Berry's workstation by his supervisor, Mr. Genero Contreras ("Mr. Contreras").

14. Mr. Contreras, a Hispanic male, admitted to intentionally leaving the noose at Mr. Berry's workstation.

15. The hangman's noose has a dark history of racial violence and hatred towards African Americans.

16. It was notoriously used to threaten, intimidate, and lynch African Americans for several decades. It was most commonly used in the South and was well-known nationwide as a symbol of hatred and control towards African Americans.

17. Recognizing the severity of the threat that the noose symbolized, Mr. Berry reported the incident to Homeland's Plant Manager, Bert Taylor ("Mr. Taylor") and Homeland's Human Resource Manager, Steven Agee ("Mr. Agee").

18. In a meeting with the two Homeland officials, Mr. Berry shared his concerns and the implications behind the noose hanging at his station. Mr. Berry was uncomfortable and afraid to work at Homeland after the incident.

19. Mr. Contreras's actions greatly affected and interfered with Mr. Berry's ability to perform his job. Unlike his white co-workers, Mr. Berry was unable to perform his job without fear, trauma, and anxiety associated with the noose hanging by his workstation.

20. Despite Mr. Berry's legitimate concerns and Mr. Contreras admitting to hanging the noose at Mr. Berry's workstation, Homeland took no action at all.

21. In fact, Homeland failed to discipline, reprimand, suspend, and/or terminate Mr. Contreras altogether.

22. Mr. Contreras claimed that he left the noose at Mr. Berry's workstation because he was bored. He claimed he believed the noose to be a lasso for horses.

23. Additionally, Mr. Contreras and Homeland claimed that Mr. Contreras was unaware of the history of the pervasive and threatening connection of the hangman's noose to the African American community. They also claimed that the noose was for work purposes.

24. Homeland's attempt to cover for Mr. Contreras's blatant racial animus and hatred towards Mr. Berry is flawed and inexcusable. Not only was the history of the hangman's noose nationwide, including in Latin America, but Mr. Contreras has also lived in the South for several decades. Both Mr. Genero and Homeland knew or should have known of the racial implications and hatred the hangman's noose symbolized.

25. Homeland's failure to act amounted to an endorsement of Mr. Contreras's conduct, thereby perpetuating racial discrimination and a hostile work environment.

## CAUSES OF ACTION

## FEDERAL CLAIMS

### COUNT I: VIOLATION OF 42 U.S.C. § 2000(e): RACIAL DISCRIMINATION AND HARASSMENT

26. Plaintiff adopts and re-alleges paragraphs 1-25 of this Complaint as if fully set forth herein.

27. Title VII of the Civil Rights Act of 1964, codified in 42 U.S.C. § 2000(e), prohibits employment discrimination based on race, color, religion, sex, and national origin.

28. Plaintiff was discriminated against in the terms, conditions, and privileges of his employment through the creation and toleration of a racially charged and hostile work environment.

29. Defendant, through its agents and employees, has a racial animus towards African Americans, including Plaintiff.

30. Plaintiff was directly affected by such animus when the hangman's noose was placed at his workstation by his supervisor, Mr. Contreras.

31. Plaintiff was further affected by such animus when Defendant's agents, Mr. Taylor and Mr. Agee, disregarded Plaintiff's good faith complaints of racial discrimination, made excuses for Mr. Contreras's actions, and failed to discipline Mr. Contreras in any way.

32. Defendant failed to take any prompt and effective action reasonably calculated to result in the prevention of and/or to remedy the racial discrimination and/or harassment of Plaintiff.

33. Defendant's actions and omissions to act directly created, nurtured, tolerated, condoned, endorsed and/or otherwise permitted racial discrimination and

harassment and are therefore actionable under Title VII of the Civil Rights Act, as codified in 42 U.S.C. § 2000(e).

### COUNT II: VIOLATION OF 42 U.S.C. § 2000(e): HOSTILE WORK ENVIRONMENT

34. Plaintiff adopts and re-alleges paragraphs 1-33 of this Complaint as if fully set forth herein.

35. Title VII of the Civil Rights Act of 1964, codified in 42 U.S.C. § 2000(e), prohibits employment discrimination based on race, color, religion, sex, and national origin.[1]

36. A plaintiff who alleges a hostile work environment must prove the following: "(1) that she belongs to a protected group, (2) that she has been subject to unwelcome harassment, (3) that the harassment must have been based on a protected characteristic of the employee, (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment, and (5) that the employer is

---

[1] The Eleventh Circuit has explained that "A hostile work environment claim under Title VII is established upon proof that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Nichols v. Volunteers of Am., North Ala., Inc.*, 470 Fed. Appx. 757, 760 (11th Cir. 2012) (quoting *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002)).

responsible for that environment under either a theory of vicarious or direct liability." *Nichols v. Volunteers of Am., North Ala., Inc.,* 470 Fed. Appx. at 760.

37. Plaintiff, an African American male, belongs to a protected class.

38. Plaintiff was subject to unwelcome harassment when his supervisor, Mr. Contreras, intentionally hung a hangman's noose by Plaintiff's workstation.

39. The noose, a historically offensive object used to intimidate and terrorize African Americans, was placed on Plaintiff's workstation only and was clearly done so because of Plaintiff's race.

40. The intentional placing of the noose on Plaintiff's workstation altered the conditions of Plaintiff's employment and created a discriminatorily abusive work environment because Plaintiff was unable to perform his job without fear, trauma, and anxiety associated with the noose hanging by his workstation.

41. Despite Plaintiff's legitimate concerns regarding the hangman's noose intentionally being placed at his workstation, Defendant failed to discipline Mr. Contreras in any way, thereby condoning and endorsing the racially offensive behavior. Such systemic discrimination promoted and reinforced racial stereotypes, bias, and discrimination in the workplace.

42. Defendant's actions and omissions to act directly created, nurtured, tolerated, condoned, endorsed and/or otherwise permitted a racially hostile environment

and are therefore actionable under Title VII of the Civil Rights Act, as codified in 42 U.S.C. § 2000(e).

### COUNT III: VIOLATION OF 42 U.S.C. § 1981: RACIAL DISCRIMINATION

43. Plaintiff adopts and re-alleges paragraphs 1-42 of this Complaint as if fully set forth herein.

44. 42 U.S.C. § 1981 gives all persons full and equal benefits of all laws and proceedings as enjoyed by white citizens.

45. To state a claim of racial discrimination under 42 U.S.C. § 1981, a plaintiff must establish: "(1) that the plaintiff is a member of a racial minority, (2) that the defendant intended to discriminate on the basis of race; and (3) that the discrimination concerned one or more of the activities enumerated in the statute." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1270 (11th Cir. 2004) (quoting *Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1235 (11th Cir. 2000)).

46. Plaintiff, an African American male, is a member of a racial minority.

47. Mr. Contreras intended to discriminate against Plaintiff when he intentionally hung the hangman's noose at Plaintiff's workstation, as evidenced by his admissions of such.

48. Defendant intentionally endorsed Mr. Contreras's intentional racial discrimination when its agents made excuses for Mr. Contreras's behavior and failed to discipline him altogether.

49. Defendant's actions and omissions to act directly created, nurtured, tolerated, condoned, endorsed and/or otherwise permitted a racially discriminatorily workplace and are therefore actionable under 42 U.S.C. § 1981.

## STATE CLAIMS

### COUNT IV: NEGLIGENCE

50. Plaintiff adopts and re-alleges paragraphs 1-49 of this Complaint as if fully set out herein.

51. Defendant has/had a duty to its employees, including Plaintiff, to use reasonable care and due diligence when responding to, addressing, and remedying employee complaints of racial discrimination in the workplace.

52. Defendant breached that duty when its' agents, Mr. Taylor and Mr. Agee, failed to adequately address and remedy the incident that makes the basis of this Complaint.

53. But for Defendant's negligence, Plaintiff would not have suffered and continued to suffer the fear, trauma, and anxiety from working with Mr. Contreras, who was not disciplined in any way, after he intentionally hung a noose from Plaintiff's workstation.

54. As a proximate result of Defendant's negligent conduct, Plaintiff suffered and continued to suffer emotional distress and injuries.

## COUNT V: WANTONNESS

55. Plaintiff adopts and re-alleges paragraphs 1-54 of this Complaint as if fully set our herein.

56. On or about July 21, 2019, Mr. Contreras viciously and maliciously hung a hangman's noose from Plaintiff's workstation. Plaintiff, the only African American in his area of the workplace, was reasonably and legitimately afraid and traumatized by the hanging of the noose.

57. Defendant recklessly and consciously disregarded the rights and safety of Plaintiff when it failed to discipline, reprimand, or terminate Mr. Contreras for the hateful and disgusting act of hanging a noose at Plaintiff's workstation.

58. As a direct and proximate result of Defendant's wrongful conduct, Plaintiff sustained significant emotional and psychological injuries and damages.

## COUNT VI: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

59. Plaintiff adopts and re-alleges paragraphs 1-58 of this Complaint as if fully set forth herein.

60. Defendant recklessly, and with the intention of causing the Plaintiff severe emotional distress, engaged in extreme and outrageous conduct by condoning Mr. Contreras's racially offensive conduct and failing to discipline him in any way after being made aware that Mr. Contreras put a hangman's noose at Plaintiff's workstation.

61. As a direct and proximate result of Defendant's actions and omission to act, which were so outrageous in character and extreme in degree as to be utterly intolerable in a civilized community, the Plaintiff suffered severe emotional distress.

62. Mr. Contreras engaged in such conduct with malice and reckless or callous indifference to Plaintiff's civil rights, and Defendant endorsed Mr. Contreras conduct as evidenced by the conversation with Mr. Taylor and Mr. Agee.

## PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff respectfully requests the entry of judgment against Defendant pursuant to an order awarding:

a. Compensatory damages in an amount to be determined for emotional distress, suffering, inconvenience, mental anguish, loss of enjoyment of life, and special damages;

b. Punitive damages against the Defendant;

c. Reasonable attorney's fees and costs; and

d. All other and further monetary and equitable relief as this Honorable Court deems just and proper.

## JURY DEMAND

63. Plaintiff respectfully requests a trial by jury on all counts.

Respectfully submitted on this day 27th day of December 2022.

                                          */s/ Leroy Maxwell, Jr.*
                                          Leroy Maxwell, Jr.
                                          Attorney for Plaintiff

**Maxwell & Tillman**
2326 2nd Avenue North
Birmingham, AL 35203
Phone: (205) 216-3304
Fax: (205) 409-4145
maxwell@mxlawfirm.com


                 **PLEASE SERVE THE DEFENDANT(S) VIA CERTIFIED MAIL:**

**Homeland Vinyl Products, Inc.**
**3300 Pinson Valley Pkwy**
**Birmingham, AL 35217**

    Cc:   **Homeland Vinyl Products, Inc.**
            **P.O. Box 170729**
            **Birmingham, AL 35217-0729**


                                          */s/ Leroy Maxwell, Jr.*
                                          OF COUNSEL